UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Cause No. 2:18-cv-362 |
| | ) |
| One Hawker 1000A Aircraft, Serial | ) |
| Number 259031, with FAA Registration | ) |
| Number N511BK-2016-FAA; | ) |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT FOR FOREITURE IN REM

Plaintiff, United States of America, by its attorneys, Thomas L. Kirsch II, United States Attorney for the Northern District of Indiana, and Orest Szewciw, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.  This is a civil action for forfeiture *in rem* of One Hawker 1000A Aircraft, Serial Number 259031, with FAA Registration Number N511BK-2016-FAA (hereinafter "the Defendant Aircraft").   The Defendant Aircraft is forfeitable to the United States pursuant to Title 49, United States Code,

Section 46306(d), for violation of 49 U.S.C. §46306(b)(4) and 19 U.S.C. § 1436(b), for violation of 19 U.S.C. § 1433(c) and (d).

2.     Defendant Aircraft was seized on or about May 15, 2018, by Immigration and Customs Enforcement, Homeland Security Investigations ("HSI') at the airport in West Lafayette, Indiana, and is presently in the custody of U.S. Customs and Border Protection in Fort Lauderdale, Florida.

## JURISDICTION AND VENUE

3.     Plaintiff brings this action <u>in rem</u> in its own right to forfeit and condemn the Defendant Aircraft.   This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355.

4.     This Court has *in rem* jurisdiction over the Defendant Aircraft under 28 U.S.C. § 1355(b)(1)(B) and 28 U.S.C. § 1395(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. §1395(b), because the Defendant Aircraft was found within this district.

## FIRST CLAIM FOR FORFEITURE

### <u>Title 49, United States Code, Section 46306(b)(4)</u>

*Registration of U.S. Aircraft*

6.     Various Federal statutes and regulations set forth the requirements for an aircraft to be properly registered with the Federal Aviation Administration ("FAA") under Title 49, United States Code, Section

44103.

7.   Title 49, United States Code, Section 44103(a)(l)(A) and (B) provides that on application of the owner of an aircraft that meets the requirements of section 44102, the Administrator of the FAA shall register the aircraft and issue a certificate of registration to its owner.

8.   Title 49, United States Code, Section 44102 provides that an aircraft may be registered only if it is not registered under the laws of a foreign country and is owned by (i) a citizen of the United States, (ii) an individual citizen of a foreign country lawfully admitted for permanent residence in the United States, or (iii) a corporation not a citizen of the United States, when the corporation is organized and doing business under the laws of the United States or a State, and the aircraft is based and primarily used in the United States.

9.   Title 49, United States Code, Section 40102(a)(15 provides that a "citizen of the United States" is (i) "an individual who is a citizen of the United States;" (ii) "a partnership each of whose partners is an individual who is a citizen of the United States;" or (iii) a corporation or association organized under the laws of the United States or a State … of which the president and at least two-thirds of the board of directors and other managing officers are citizens of the United States, which is under the actual

control of citizens of the United States, and in which at least 75 percent of the voting interest is owned or controlled by persons that are citizens of the United States.

10.   Pursuant to Title 14, Code of Federal Regulations, Section 47.8 (Voting Trusts), a Voting Trust may be used to qualify as a U.S. citizen a domestic corporation that is owned by a foreign corporation or other non-U.S. citizen for purposes of registering an aircraft.   Section 47.8 further provides that if a voting trust is used to qualify a domestic corporation as a U.S. citizen, the corporate applicant must submit, among other things, an affidavit executed by each person designated as voting trustee in the voting trust agreement, in which the affiant represents, among other things, that each voting trustee is not aware of any reason, situation, or relationship under which any other party to the agreement might influence the exercise of the voting trustee's totally independent judgment under the voting trust agreement.

11.   Title 14, Code Federal Regulations, Section 47.43(a) states, in pertinent part:

(a)   The registration of an aircraft is invalid if, at the time it is made-

(1) The applicant is not qualified to submit an application under this part; or
(2) The interest of the applicant in the aircraft was created by a transaction that was not entered into in good faith,

but rather was made to avoid (with or without the owner's knowledge) compliance with 49 U.S.C. 44101-44104.

*FAA Registration History of Defendant Aircraft*

12.    According to FAA Registration records, on October 29, 2014, JF Aircorp Inc. ("JF") purchased the Defendant Aircraft from Wilmington Trust Company.   Corporate records from the Delaware Secretary of State show that JF was incorporated on September 22, 2014.   JF's certificate of incorporation lists Incorporating Services Ltd., located at 3500 South DuPont Highway, Dover, DE 19901, as the incorporator and registered agent.   JF's 2014 Annual Franchise Tax Report lists Conrad S. Kulatz ("Kulatz") and Federico A. Machado ("Machado") as Directors located at 3500 South DuPont Highway, Dover, DE 19901.

13.    On December 18, 2014, only a few months after purchasing the Defendant Aircraft, JF sold the Target Aircraft to America Core Aviation, LLC ("ACA").   ACA lists Incorporating Services Ltd., located at 3500 South DuPont Highway, Dover, DE 19901 as the incorporator and registered agent.

14.    On December 21, 2015, ACA sold the Defendant Aircraft to Gull Aircorp, Inc. (Gull).   Gull was incorporated on November 12, 2015, in the State of Delaware.   Like JF and ACA, Gull's certificate of incorporation lists Incorporating Services Ltd as the incorporator and registered agent.   Gull's 2016 Annual Franchise Tax Report lists Kulatz as Director.   The same

record shows that Gull has a total of 1000 shares of common stock authorized for issuance.

15.   On November 12, 2015, an Aircraft Voting Trust Agreement ("Voting Trust Agreement") was entered into by Gull,   Aereo VTA Services, Inc. ("Aereo") and General Business Services SA de CV ("GBS").   A copy of the Trust Agreement is attached as Exhibit 1.

16.   Aereo is a Delaware corporation incorporated on April 3, 2012. The 2015 State of Delaware Annual Franchise Tax Report for Aereo, lists Eileen A Game ("Game") as Officer, Director, and President with an address of 200 W. Palmetto Park Rd Ste 104 Boca Raton, FL 33432.   Kulatz is listed as a director of Aereo with an address of 200 W. Palmetto Park Rd Ste 104 Boca Raton, FL 33432.

17.   General Business Services SA de CV ("GBS") is ostensibly a Mexican corporation, as represented in the Trust Agreement, which owns all of Gull's stock, which it assigned to Aereo.   "SA de CV" is a designation used in Mexico to indicate a corporation.   It stands for Sociedad Anonima de Capital Variable, which is the most formal business structure in Mexico.

18.   A corporate records database query conducted conducted in Mexico failed to disclose the existence of a corporation known as General Business Services SA de CV.

18.    Kulatz executed the Trust Agreement on behalf of Gull in his capacity as President.

19.    Game executed the Trust Agreement on behalf of Aereo, the Voting Trustee, in her capacity as President.

20.    An unidentified person executed the Trust Agreement on behalf of GBS as "Its Authorized Officer."

21.    Pursuant to the terms of the Voting Trust Agreement (¶ 4.1) and as required pursuant to 14 C.F.R. § 47.8(a)(2), Game, as President of Aereo (the Voting Trustee), executed a Trustee Affidavit of Independence.   The Affidavit provides, among other things, that "[t]he Trustee is not aware of any reason, situation, or relationship under which either of said parties might influence the exercise of the Trustee's totally independent judgment as a Voting Trustee under said Voting Trust Agreement (¶5 of Affidavit).   A copy of the Affidavit is attached to the Trust Agreement.

22.    Section 4.1 of the Trust Agreement provides that the Voting Trustee shall not have a direct or indirect financial interest that would impair substantially its independence of action in the exercise of its voting power as provided in Section 4.3 of the Trust Agreement.   Section 4.3 thereof provides that, in voting the stock of Gull in connection with all matters involving the aircraft [the Defendant Aircraft], the Voting Trustee shall be

free of any kind of control by the Stockholders [GBS] and shall exercise its voting power to protect the interests of the United States, notwithstanding any countervailing interests of foreign powers which, or whose citizen may be the beneficial owner of Gull's shares of stock.

23.   Kulatz and Game were husband and wife at the time the Voting Trust Agreement was executed.   Data base queries show they share the same address as of January 19, 2018, and no record of dissolution of the marriage has been located.

24.   Gull submitted its application for U.S. registration of the Defendant Aircraft on January 9, 2016.   The submission included the Voting Trust Agreement and the Trustee Affidavit of Independence.   The FAA approved the application and issued a certificate of registration for the Defendant Aircraft on January 15, 2016.

25.   Gull no longer exists as a matter Delaware law. On March 1, 2017, the registered agent for Gull filed a certification of resignation. On March 31, 2017, Gull failed to obtain and designate a registered agent, thereby dissolving and forfeiting its incorporation and forfeiting its good standing under Delaware law. See 8 Del. C. § 275. There has been no renewal of registration of the Defendant Aircraft's registration.   United States Customs and Border Protection agency ("CBP") records show that the Defendant

Aircraft has made numerous trips between the United States and Mexico since Gull forfeited its corporate existence.

### Basis of Forfeiture

25.   As set forth in paragraphs 26-30 below, Gull obtained a certificate of registration for the Defendant Aircraft by "knowingly and willfully falsifying or concealing a material fact, making a false, fictitious, or fraudulent statement, or making or using a false document knowing it contains a false, fictitious, or fraudulent statement or entry" when it submitted the Trust Agreement and the Affidavit to register the Defendant Aircraft.   See 49 U.S.C. § 46306(b)(4).

26.   Game and Kulatz were married when Gull submitted the registration application for the Defendant Aircraft. The marital relationship between Kulatz and Game created a relationship or situation under which Gull, through its President, Kulatz, and GBS as 100% owners of Gull, might influence the exercise of the Voting Trustee's independent judgment, as prohibited by 14 C.F.R. §47.8(a)(iv).   At the time the registration application was submitted, Game was President of Aereo, and Kulatz was President of Gull and a Director of Aereo.

27.   The registration application herein includes the Voting Trust Agreement and Affidavit.   The Affidavit contains a material false statement,

to wit, that the voting trustee was "not aware of any reason, situation, or relationship under which any other party to the agreement might influence the exercise of the voting trustee's totally independent judgment under the voting trust agreement."   The marital relationship between Game and Kulatz is a relationship that might influence the exercise of the voting trustee's independent judgment.

28.   The Voting Trust Agreement contains a material false statement, to wit, that the Voting Trustee does not "have a direct or indirect financial interest that would impair substantially its independence of action in the exercise of its voting power as provided in Section 4.3 of the Trust Agreement."   The marital relationship creates an indirect, if not a direct, financial interest for Game (and therefore the Voting Trustee) in Gull, since her husband (Kulatz) is the President of Gull and presumably received compensation for his position.

29.   The Voting Trust Agreement contains a material false statement, to wit, that the Voting Trustee is "free of any kind of control by the Stockholders" in connection with matters involving the aircraft.   GBS, which owns all of the stock of Gull, whose President is Kulatz, is in a position to exercise control over the Voting Trustee through Kulatz due to the marital relationship.

30.   Defendant Aircraft was registered through the submission of fraudulent registration documents designed to conceal the true owner of the aircraft, a Mexican national who is not a U.S. permanent resident alien and therefore ineligible to register the Defendant Aircraft in his own name.

## SECOND CLAIM FOR FORFEITURE

### Title 19, United States Code, Section 1433(c)-(d)

31.   Title 19, United States Code, Section 1433(c), provides that the "pilot of any aircraft arriving in the United States or the Virgin Islands from any foreign airport or place shall comply with such advance notification, arrival reporting, and landing requirements as the Secretary may by regulation prescribe."   Section 1433(d) provides that "[t]he …   aircraft pilot shall present, or transmit pursuant to an electronic data interchange system, to the Customs Service such information, data, documents, papers, or manifests as the Secretary may by regulation prescribe."

32.   Title 19, Code of Federal Regulations, Section 122.22(c), requires private aircraft pilots or their designees arriving in the United States from a foreign port or location destined for a U.S. port or location, or departing the United States to a foreign port or location, to transmit electronically to CBP Advance Passenger Information System ("APIS") filings at least one hour prior to departure.   The filings contain specific information for each

individual traveling onboard the aircraft.

33.   Section 122.22(c) and similar regulations seek to minimize the vulnerability of private aircraft flights being used to deliver illicit materials, transport dangerous individuals or employ the aircraft as a weapon.   Prior to passage of the regulation, compared to regularly scheduled commercial airline operations, little or no screening or vetting of the crew, passengers or the aircraft itself was required of private aircraft before entering or departing the United States.

34.   Title 19, United States Code, Section 1436 (penalties for violations of arrival, reporting, entry, and clearance requirements) makes it unlawful "to fail to comply with section … 1433 of this title …."   Section 1436(b) subjects any conveyance used in connection with such violation to seizure and forfeiture.

35.   A log of flight plans filed for the Defendant Aircraft from January 1, 2015 to April 9, 2018, which log included international flight plans required by federal law (14 C.F.R. § 91.707), was compared to electronically filed APIS filings by the pilot of the Defendant Aircraft for each person on the aircraft when it entered or departed the United States from a foreign location.   A total of seventeen international flights were logged from May 16, 2016, to April 9, 2018, wherein the Defendant Aircraft filed international

flight plans without filing APIS.   Eleven of the eighteen flights involve flights where the Defendant Aircraft appears to have departed from the United States.

WHEREFORE, the plaintiff requests that the Defendant Aircraft be forfeited and condemned to the United States of America; that Warrant of Arrest In Rem be issued for Defendant Aircraft; that the plaintiff be awarded its costs and disbursements in this action; and for such other and further relief as this court deems proper and just.

Respectfully submitted,

THOMAS L. KIRSCH II
UNITED STATES ATTORNEY


By:    /s/ Orest Szewciw
       Orest Szewciw
       Assistant U.S. Attorney
       5400 Federal Plaza, Suite 1500
       Hammond, Indiana 46320
       Tel: (219)937-5500
       Fax: 219-852-2770
       email:orest.szewciw@usdoj.gov

## **VERIFICATION**

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that, I, Edward C. Schwer, Special Agent with the Immigration and Customs Enforcement, Homeland Security Investigations (HSI), have read the foregoing Complaint for Forfeiture In Rem and state that the contents are true to be best of my knowledge and belief.

Edward C. Schwer
Special Agent, HSI

14

I hereby certify this to be
a true and correct
copy of the original
By:

Accepted CF Jan/15/2018



Gull Aircorp. Inc.
3500 South Dupont Hwy
Dover, Delaware 19901

# VOTING TRUST AGREEMENT

COUNSEL:

Conrad S. Kulatz, Esquire        (KMIA)
633 S.E. Third Avenue, Suite 4R   (KFLL)
Fort Lauderdale, Florida 33301    (KFXE)
(954)527-0002 Fax 524-5143       (KPBI)

(KSEF) (KAVO) (KMCO) (KTPA)
442 Hendricks Field Way, Bldg. C104
Sebring, Florida 33870
(954) 527-0002 Fax (866) 991-7599



Exhibit 1

I here...
a true c...
copy of the
By __ ...

OKLAHOMA
OKLAHOMA CITY

2016 JAN 15 PM 1 37

AIRCRAFT REGISTRATION BR
FILED WITH FAA

## <u>AIRCRAFT VOTING TRUST AGREEMENT</u>

# <u>GULL AIRCORP. INC.</u>

**THIS VOTING TRUST AGREEMENT** ("Agreement") is entered into as of November 12, 2015, by and among Gull Aircorp. Inc. a Delaware Corporation (the "Company"), BBB, the ("Stockholder[s]") and Aereo VTA Services, Inc. as Voting Trustee, a corporation organized and existing under the laws of the State of Delaware, a citizen of the United States of America, (together with any successors the "Voting Trustee").

### <u>RECITALS</u>

A. The Stockholder[s] represents that he/she/it is the owner of 1000 shares of Common Stock of the Company (the "Common Stock"), with no par value, representing all of the issued and outstanding shares of Common Stock of the Company, all of which shares are to be deposited with the Voting Trustee under this Agreement.

B. The Company represents that there are no voting interests in the Company other than the Common Stock.

C. The parties hereto deem it to be in the interest of the Company and of the Stockholder[s] that this Agreement should be made.

### <u>AGREEMENTS</u>

**NOW THEREFOR**, in consideration of the mutual covenants and obligations set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby conclusively acknowledged, the parties hereto agree as follows:

1.    <u>Creation of Voting Trust:</u>

1.1 <u>Deposit of Shares</u>.  The Stockholder[s] hereby assigns and transfers to the Voting Trustee all of the shares of Common Stock of the Company now or at any time hereafter held by him/her/it during the term of this Agreement, however acquired, and shall immediately deposit with the Voting Trustee the certificates for such shares now held by

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2016 JAN 15 PM 1 37
OKLAHOMA CITY
OKLAHOMA

him/her/it, or which he/she/it may receive, duly endorsed in blank or accompanied by a proper instrument of assignment duly executed in blank, together with any requisite transfer tax stamps attached thereto for an amount sufficient to pay all federal, state, and local taxes or other governmental charges, if any, then payable in respect of such deposit or transfer. If the Company is newly formed, the initial issue of shares shall be to the Voting Trustee.

1.2 <u>Delivery of Voting Trust Certificates</u>. Upon receipt by the Voting Trustee of the certificates for any shares of Common Stock of the Company, the Voting Trustee shall hold such shares subject to the terms and conditions of this Agreement and shall deliver or cause to be delivered to the Stockholder[s] voting trust certificates ("Voting Trust Certificates") representing the shares so deposited by the Stockholder[s] in the form provided for in Section 2.1 hereof.

1.3 <u>Issuance of Certificates to Voting Trustee</u>. All certificates for shares of Common Stock transferred and delivered to the Voting Trustee pursuant to this Agreement shall be surrendered by the Voting Trustee to the Company and canceled, and new certificates therefor fully paid and nonassessable shall be issued by the Company to and in the name of the Voting Trustee. Such new certificates and any other certificates for shares issued to the Voting Trustee pursuant to Section 2.2 hereof may be endorsed by the Company with a legend to the effect that they are issued by the Company pursuant to this Agreement and a similar notation shall appear in the appropriate place in the transfer books of the Company.

1.4 <u>Acceptance of Trust, Etc.</u> The Voting Trustee accepts the Voting Trust created hereby in accordance with all of the terms and conditions contained in this

Agreement.

2.    Voting Trust Certificates.

2.1  Form; Legend.  The Voting Trust Certificates to be issued and delivered by the Voting Trustee under this Agreement in respect of any shares of Common Stock of the Company shall be substantially in the form of Exhibit A attached hereto, with such changes therein consistent with the provisions of this Agreement as the Voting Trustee may from time to time deem appropriate.  Each Voting Trust Certificate shall have the following legend stamped, typed or otherwise legibly placed on the face or the last page thereof:

Sale, pledge or other disposition or transfer of this Voting Trust Certificate and the shares of stock of Gull Aircorp. Inc., represented hereby is restricted by the terms of the Voting Trust Agreement dated of even date herewith, which may be examined at the registered offices of the Company, which offices are located at Dover, Delaware or at such other office as may be designated for that purpose and are open to inspection in accordance with the requirements of law.

2.2  Transfer; Registered Holders; Transfer Books.   The Voting Trust Certificates shall be transferable only on the books of the Voting Trustee, upon surrender of such Voting Trust Certificates (duly endorsed in blank or accompanied by a proper instrument of assignment duly executed in blank, together with all requisite transfer tax stamps attached thereto and an amount sufficient to pay all federal, state and local taxes or other governmental charges, if any, then payable in connection with such transfer) by the registered holder in person or by such holder's duly authorized attorney.   Upon the surrender of any Voting Trust Certificates for transfer, the Voting Trustee shall cancel such Voting Trust Certificates and issue to the transferee new Voting Trust Certificates in the same form and representing the same number of shares of Common Stock as the Voting Trust Certificates presented for cancellation.  The Voting Trustee may not issue, alienate or

dispose of any of the Voting Trust Certificates without the prior written consent of the beneficial owner(s) of the Common Stock of the company.

The Stockholder[s] represents and warrants that he/she/it is acquiring the Voting Trust Certificate for investment purposes and not with a view to their resale or distribution. The Voting Trustee shall not be required to transfer Voting Trust Certificates unless it shall receive an opinion of counsel satisfactory to it that no violation of the registration provisions of the United States Federal or State securities laws would result from the transfer.

The Voting Trustee may treat the registered holder of each of such Voting Trust Certificates as the absolute owner thereof for all purposes whatsoever, and accordingly shall not be required to recognize any legal, equitable or other claim or interest in each such Voting Trust Certificate on the part of any other person, whether or not they shall have express or other notice thereof.

3.    Dividends.

3.1 Cash Dividends. The Voting Trustee shall receive and hold, subject to the terms of this Agreement, any dividends or distributions declared and paid on the shares deposited hereunder and shall distribute directly any such dividends or distributions to holders of Voting Trust Certificates in proportion to their respective interests therein as shown on the books of the Voting Trustee, such distribution to be equivalent to the dividends or distribution which each respective holder would have been entitled to receive had said holder not deposited shares hereunder.

3.2 Stock Dividends. The Voting Trustee shall receive and hold, subject to the terms of this Agreement, any voting securities of the Company issued in respect thereof

by reason of any capital reorganization, stock split, combination or the like and shall issue and deliver Voting Trust Certificates therefor to the holders of Voting Trust Certificates in proportion to their respective interests therein as shown on the books of the Voting Trustee.

4.    The Voting Trustee.

4.1 Status. The Voting Trustee hereby represents and warrants that it is and will continue to be a "citizen of the United States" as defined in 49 U.S.C. Section 1301(16) as amended from time to time. Any vacancy in the position of the Voting Trustee may be filled pursuant to Section 4.7 hereof. The Voting Trustee shall not have direct or indirect financial interests that would impair substantially its independence of action in the exercise of its voting power as provided in Section 4.3 hereof. Simultaneously with the execution and delivery of this Agreement by the Voting Trustee, the Voting Trustee shall execute and deliver to Stockholder[s] (or such other person as Stockholder[s] may designate in writing to Voting Trustee) a Trustee's Affidavit of Independence in the form of Exhibit B attached hereto, to serve as the affidavit required under the regulations promulgated by the Federal Aviation Administration in 14 C.F.R. Section 47.8 (a)(2).

4.2 Voting of Shares; Unit Vote; No Proxy. Until the retransfer of certificates for shares of Common Stock in exchange for Voting Trust Certificates pursuant to Section 7 hereof, the Voting Trustee shall possess and be entitled in its discretion to exercise all rights and power to vote such shares and to give consents with respect to any lawful corporate action, except as otherwise provided herein. No holder of Voting Trust Certificates shall in such capacity have any rights or powers to vote such shares or to give consents with respect to or otherwise take part in any corporation action. Subject to the requirements of Section 4.3, and notwithstanding the preceding sentence of this Section

4.2 the Voting Trustee agrees that it shall not, without the prior written consent of the holders of the Voting Trust Certificates representing all of the outstanding shares of Common Stock or the Company, vote to (i) amend the Articles of Incorporation of the Company, (ii) liquidate the Company, (iii) sell, mortgage, pledge or otherwise dispose of all or substantially all of the assets of the Company, including the Aircraft (as hereinafter defined), or (iv) merge or consolidate with any other person or entity. At all meetings of the Stockholder[s] of the Company, or upon any questions submitted to such Stockholder[s] for a vote, the shares held by the Voting Trustee pursuant to this Agreement and entitled to vote at such meetings or upon such questions shall be voted as a unit. The Voting Trustee may not act through a proxy.

4.3 <u>Voting Trustee; Freedom From Stockholder Control.</u> In voting the stock of the Company in connection with all matters involving aircraft owned by the Company and registered in the United States (as determined by the Voting Trustee), the Voting Trustee shall be free of any kind of control by the Stockholder[s], and shall exercise its voting power in its discretion, as it shall deem necessary to protect the interests of the United States, notwithstanding any countervailing interests of foreign powers which, or whose citizen, may be the beneficial owners of the Company's shares, and such action by the Voting Trustee shall not be considered malfeasance, or in breach of any obligation which the Voting Trustee might otherwise have to the Stockholder[s] or the Company. This authority of the Voting Trustee shall include, without being limited to, the selection of suitable persons as directors of the Company. Subject to the foregoing, Voting Trustee with respect to the control or management of the Company, shall promote the best interests of the Company to the end that its affairs shall be properly managed.

4.4  Removal.  Subject to the requirement that a Successor Trustee be appointed in accordance with Section 4.6 hereof to replace the Voting Trustee whose removal is effected pursuant to this Section, any Voting Trustee may be removed only for cause by the affirmative vote of or by a written instrument or instruments signed by the holders of Voting Trust Certificates representing a majority of the outstanding shares of Common Stock of the Company.  Any Voting Trustee shall cease immediately to be a Voting Trustee at such time as such Voting Trustee ceases to be a citizen of the United States without any affirmative action by the holders of Voting Trust Certificates.

4.5  Resignation.  Any Voting Trustee may resign at any time upon giving thirty (30) days prior written notice of such resignation to the Company and to the holders of the Voting Trust Certificates.  Such resignation shall take effect upon expiration of such thirty (30) day period, whereupon all powers, rights and obligations of the resigning Voting Trustee under this Agreement shall cease and terminate.

4.6  Successor Trustee.  Promptly upon (a) receipt of a notice of resignation from the Voting Trustee in accordance with Section 4.5 hereof, or (b) removal of the Voting Trustee in accordance with Section 4.4 hereof, a successor voting trustee shall be appointed by the affirmative vote of or by written instrument or instruments signed by holders of the Voting Trust Certificates representing a majority of the outstanding shares of Common Stock of the Company.  Such successor voting trustee shall be a citizen of the United States and shall assume all powers, rights and obligations of the Voting Trustee hereunder immediately upon the resignation or removal of the Voting Trustee becoming effective.

4.7  Vacancies.  If any vacancy shall occur in the position of the Voting

Trustee by reason of the death, removal, resignation, loss of United States citizenship, inability or refusal to act as Voting Trustee, such vacancy shall be filled by the appointment of a Successor Voting Trustee, who shall be a citizen of the United States, by the affirmative vote of the holders of Voting Trust Certificates representing a majority of the outstanding shares of Common Stock of the Company.  If there is at any time a vacancy, it is understood that the holders of the Voting Trust Certificates may not exercise the voting power of the stock evidenced by such certificates and that said voting power will accordingly remain suspended during such vacancy.

      4.8  <u>Fees, Etc.</u>  Each calendar year the Company shall pay to the Voting Trustee, reasonable compensation for its administration of the Voting Trust created hereby and for the proper exercise of its powers and performance of its duties under this Agreement, plus all out-of-pocket expenses (including legal fees) reasonably incurred by the Voting Trustee in the establishment of the Voting Trust contemplated hereby, the preparation of this Agreement and other documentation prepared in connection herewith and with the administration of this Voting Trust.

      5.  <u>Indemnification of Voting Trustee by Company and Stockholder.</u>  Whether or not any of the transactions contemplated hereby shall be consummated, the Company and the Stockholder[s], jointly and severally, hereby agree to assume liability for and do hereby indemnify, protect, save and keep harmless the Voting Trustee and its successors, assigns, agents, employees and servants from and against any and all liabilities, obligations, losses, damages, penalties, taxes, claims, actions, suits, costs, expenses or disbursements (including legal fees and expenses) of any kind and nature whatsoever which may be imposed upon, incurred by or asserted against the Voting Trustee in any way relating to or

arising under this Voting Trust Agreement or the enforcement of any of the terms hereof or in any way relating to or arising out of the manufacture, purchase, acceptance, nonacceptance, rejection, ownership, delivery, lease, possession, use, operation, condition, sale, return or other disposition of that certain aircraft more particularly described in Exhibit C attached hereto (hereinafter, the "Aircraft") or any other asset owned or used by the Company or a Stockholder, or in any way relating to or arising out of the administration of the trusts created hereby or the action or inaction of the Voting Trustee hereunder except only in the case of willful misconduct on the part of the Voting Trustee in the performance of its duties hereunder.   The indemnities contained in this Section 5 shall survive the termination of this Voting Trust Agreement.   The Company and the Stockholder[s] shall assure that, upon the acquisition of the Aircraft by the Company, and at all times thereafter during the term of this Voting Trust Agreement, there shall be outstanding with respect to the Aircraft insurance against loss or damage to the Aircraft (All-Risk Ground, Flight, and Aircraft Hull Insurance), in the amounts set forth in and required by any lease or mortgage then in effect with respect to the Aircraft, and if there is no such lease or mortgage, then in amounts which shall be reasonable and consented to by the Voting Trustee.   All such insurance policies shall name the Voting Trustee as an additional named insured thereunder and shall provide for not less than thirty (30) days' written notice to the Voting Trustee before any alteration or cancellation thereof.   Prior to the Company's acquisition of the Aircraft, the Company shall give notice thereof to the Voting Trustee.   Also certificates or other evidence satisfactory to the Voting Trustee showing evidence of all such insurance being in full force and effect shall be delivered to the Voting Trustee prior to the acquisition of the Aircraft and periodically thereafter prior to the expiration of any such insurance policy

or policies. If at any time during the term of this Voting Trust, any of the insurance coverage as specified herein is not in effect, or, if on the date of the acquisition of the Aircraft such insurance coverage is not in effect, the Voting Trustee may immediately resign without prior notice to the Company or the Stockholder[s]. Reasonable effort must be made to notify Company and the Stockholders in the event of resignation.

6. Holders of Voting Trust Certificates Bound; Waiver of Claims Against Voting Trustees. Every registered holder of a Voting Trust Certificate, and every bearer of a Voting Trust Certificate properly endorsed in blank or properly assigned, by the acceptance or holding thereof: (a) shall be deemed conclusively for all purposes to have assented to this Agreement and to all of its terms, conditions and provisions and shall be bound thereby with the same force and effect as if such holder or bearer had executed this Agreement, and (b) severally agrees to waive and by such act does waive any and all claims of every kind and nature which hereafter each such holder or bearer may have against the Voting Trustee, and agrees to release and by such act does release the Voting Trustee, its successors and assigns, from any liability whatsoever arising out of or in connection with the exercise of its powers or the performance of its duties hereunder, except liability for the willful misconduct of such Voting Trustee.

7. Termination

7.1 Termination Date. The Voting Trust created by this Agreement shall terminate (a) without any notice or other action of the Voting Trustee on December 31, 2030, unless extended as provided by law, or (b) at any time by the affirmative vote or written consent of all of the holders of Voting Trust Certificates representing the outstanding shares of Common Stock of the Company.

7.2 <u>Exchange of Shares and Voting Trust Certificates.</u> Upon termination of this Agreement, the Voting Trustee, in exchange for or upon surrender of any Voting Trust Certificates then outstanding, shall, in accordance with the terms thereof and of the certificates for shares of Common Stock received and held by it hereunder, deliver, to the holders of Voting Trust Certificates, certificates endorsed in blank for shares of Common Stock representing the same number of shares of Common Stock as are represented by such Voting Trust Certificates, and thereupon all liability of the Voting Trustee for delivery of such certificates shall terminate. The Voting Trustee may require the holders of Voting Trust Certificates to exchange their Voting Trust Certificates for certificates so received for such shares of Common Stock.

8. <u>Notices.</u> All notices in connection with this Agreement shall be in writing and shall be given by certified mail, courier or personal delivery, addressed as follows:

| | |
|---|---|
| Voting Trustee: | Aereo VTA Services, Inc.<br>3500 South Dupont Hwy<br>Dover, Delaware 19901 |
| Company: | Attn: Conrad S. Kulatz, Esquire<br>Hangar Bay C2 - Bldg. C104<br>442 Hendricks Field Way<br>Sebring, Florida 33870 |
| Stockholder[s]: | General Business Services SA de CV<br>Adolfo Lopez Mateos Nte. 563, int 101<br>Col. Ladron de Guevara<br>Guadalajara, Jal. 44600 MEXICO |

or, as to any party, to such other address as such party shall from time to time designate by written notice to the other parties. The effective date of any notice given in connection with this Agreement shall be the date on which it is received by the addressee.

9. <u>Miscellaneous.</u> The terms of this Agreement shall be binding upon and inure to

the benefit of and shall be enforceable by the Company, the Stockholder[s] and the Voting Trustee and their respective successors and assigns. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware. In case any provision of this Agreement shall be held to be invalid or unenforceable in whole or in part, neither the validity nor the enforceability of the remainder of this Agreement shall in any way be affected. Any party may amend this Agreement at any time by an instrument in writing duly executed by all the parties hereto. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Copies of this Agreement and of every agreement amending or supplementing this Agreement shall be kept by the Voting Trustee and by the Company on file in its registered offices, which are located in Dover, Delaware, and which shall be open to inspection in accordance with the requirements of law.

10. Disclaimer. This Voting Trust is being established by the Company and the Stockholder[s] in order that the Aircraft will be eligible for registration with the Federal Aviation Administration within the meaning of 49 U.S.C. '44101, et. Seq., as amended. Neither the Voting Trustee nor its employees, agents, or attorneys make any representation whatsoever that the execution of this Agreement or the establishment of this Voting Trust will cause the Aircraft to be eligible for such registration and, further, neither the Voting Trustee nor its employees, agents, or attorneys assumes any responsibility whatsoever for the adequacy of this Agreement or the Voting Trust created hereunder to meet any purpose of the Company or Stockholder[s]. The Company and the Stockholder[s] are solely responsible for the adequacy of this Agreement and the Voting Trust created hereunder in meeting any purpose they may have.

11.   Consent to Jurisdiction; Waiver of Immunities.   The Company and the Stockholder[s] hereby irrevocably submit to the jurisdiction of the Courts of the State of Delaware or the United States Federal Courts sitting therein, in any action or proceeding brought to enforce or otherwise arising out of or relating to this Agreement.   The Stockholder[s] irrevocably appoints Incorporating Services Ltd. at 3500 South Dupont Hwy, Dover, Delaware 19901 as his/her/its agent for service of process, to receive on behalf of the Stockholder[s] and his/her/its property, service of copies of the summons and complaint and any other process which may be served in any such action or proceeding.  Such service may be made by mailing or delivering a copy of such process to the Stockholder[s] in care of such process agent, at the address of such process agent stated above, and the Stockholder[s] hereby irrevocably authorizes and directs such process agent to accept such service on his/her/its behalf.  As an alternative method of service of process, the Stockholder[s] irrevocably consents to the service of any and all process in any such action or proceeding by the mailing of copies of such process to the Stockholder[s] by registered or certified mail at his/her/its address designated in Section 8.   In addition, the Stockholder[s] and the Company hereby irrevocably waive to the fullest extent permitted by law any objection which they may now or hereafter have to the laying of venue in any such action or proceeding in the Courts of the State of Delaware or the United States Federal Courts sitting therein, and hereby further irrevocably waive any claim that any such forum is an inconvenient forum.

12. Counterparts.  This Agreement may be fully executed in any number of separate counterparts by each of the parties hereto, all such counterparts together constituting but one and the same instrument and only one set of rights and obligations shall arise

therefrom.  Signatures to this Agreement transmitted by electronic mail in Aportable document format@ (.pdf) form, or by any other means intended to preserve the graphic and pictorial appearance of this document will have the same effect as physical delivery of the paper document bearing the original signature.

(Signature Page Follows)

**IN WITNESS WHEREOF**, the respective parties have caused this Agreement to be executed as of the date first above written.

Gull Aircorp. Inc.

By:_____
C. S. Kulatz, President

General Business Services SA de CV, Stockholder

By:_____
Its Authorized Officer

AEREO VTA SERVICES, INC.,
Voting Trustee

By:_____
E. A. Game,, President

EXHIBIT A TO VOTING TRUST AGREEMENT
Gull Aircorp. Inc.
(A Delaware Corporation)

No. **(EXAMPLE)**                    ___ Shares

### VOTING TRUST CERTIFICATE

THIS IS TO CERTIFY THAT:

1. This Certificate is issued pursuant to, and the rights of the holder hereof are subject to, the terms and conditions of a Voting Trust Agreement (the "Voting Trust Agreement"), dated as of November 12, 2015, among Gull Aircorp. Inc., a Delaware corporation (the "Company"), _____ (the "Stockholder"), and Aereo VTA Services, Inc., as Voting Trustee (together with its successors, the "Voting Trustee"). Copies of the Voting Trust Agreement are kept on file by the Voting Trustee and by the Company, in office at 3500 South Dupont Hwy, Dover, Delaware, 19901 and are open to inspection in accordance with the requirements of law.

2. By delivery of this Certificate, the holder hereof and every transferee agrees to be bound by the terms of this Certificate and of the Voting Trust Agreement.

3. On December 31, 2030 (or upon such later date as may be provided by further agreement lawfully extending the term of the voting trust created pursuant to the Voting Trustee Agreement) or upon the earlier termination of the Voting Trust Agreement as provided therein, the Stockholder shall be entitled to receive a certificate or certificates endorsed in blank for an aggregate of 1,000 shares of Common Stock of the Company (the "Common Stock"), no par value per share, and in the meantime from time to time to receive payments equal to cash dividends, if any, collected by or for the account of the Voting Trustee upon a like number of such shares outstanding in its name. If the Voting Trustee

shall receive any certificates for shares of Common Stock issued by way of dividend upon or in exchange for the certificates for shares represented by this Certificate, the Voting Trustee shall hold such certificates in accordance with the terms of the Voting Trustee Agreement and shall issue Voting Trust Certificates therefor.

4. Until the retransfer to the holder hereof of certificates for the shares of Common Stock represented by this Certificate, the Voting Trustee shall possess and be entitled in its discretion to exercise all rights and powers to vote such shares as provided in the Voting Trust Agreement, and to give consents with respect to any lawful corporate action, and no holder of this Certificate shall in such capacity have any rights or powers to vote such shares or to give consents with respect to or otherwise take part in any corporate action.

5. This Certificate is transferable only on the books of the Voting Trustee to be kept by its or its agents until surrendered for transfer (duly endorsed in blank or accompanied by a proper instrument of assignment duly executed in blank, together with all requisite transfer tax stamps attached thereto and an amount sufficient to pay all United States federal, state and local taxes or other governmental charges, if any, then payable in respect of such transfer) by the registered holder in person or by such holder's duly authorized attorney. Until this Certificate is transferred as above, the Voting Trustee may treat the registered holder hereof as the absolute owner hereof for all purposes whatsoever.

6. This Certificate is not valid unless signed by the Voting Trustee.

7. In the event of any inconsistency or conflict between the provisions of the Voting Trust Certificates and the provisions of this Voting Trust Agreement, the provisions of the Voting Trust Agreement shall govern and control in all respects.

IN WITNESS WHEREOF, the undersigned Voting Trustee has caused this Certificate to be signed as of _Nov. 12, 2015_

AEREO VTA SERVICES, INC.

**(EXAMPLE)**

By:_____
President of the Voting Trustee

## EXHIBIT B TO VOTING TRUST AGREEMENT
## TRUSTEE AFFIDAVIT OF INDEPENDENCE

STATE OF FLORIDA       )
COUNTY OF BROWARD  )

E. A. Game, President of Aereo VTA Services, Inc., being first duly sworn on oath, deposes and says:

1. This affidavit is made in connection with that certain Voting Trust Agreement dated as of November 12, 2015 (the "Voting Trust Agreement") among Aereo VTA Services, Inc., as Voting Trustee the ATrustee@, Gull Aircorp. Inc., a Delaware Corporation, and BBB (the "Stockholder[s]").

2. The Trustee is a citizen of the United States within the meaning of 49 U.S.C. '40102 (a) (15), as amended;

3. That the Trustee is not a past, present, or prospective director, officer, employee, attorney, or agent of any other party to the Voting Trust Agreement.

4. The Trustee is not a present or prospective beneficiary, creditor, debtor, supplier, or contractor of or to any other party to the Voting Trust Agreement; and

5. The Trustee is not aware of any reason, situation, or relationship under which either of said parties might influence the exercise of the Trustee's totally independent judgment as a Voting Trustee under said Voting Trust Agreement.

Dated as of November 12, 2015

Aereo VTA Services, Inc. Voting Trustee

By: _____
E. A. Game,, President

The foregoing instrument was acknowledged before me this November 12, 2015 by E. A. Game, President of Aereo VTA Services, Inc. Voting Trustee, who is personally known to me and who did take an oath.

NOTARY PUBLIC

My Commission Expires:

BARBARA M. DAVIS
Notary Public - State of Florida
My Comm. Expires Mar 11, 2017
Commission # EE 868584
Bonded Through National Notary Assn.

EXHIBIT C TO VOTING TRUST AGREEMENT

The term "Aircraft" contained in the Agreement to which this Exhibit C is attached refers to the following equipment:

One (1) Corporate Jets Ltd.

U.S. Registration Number N511BK

Aircraft Serial Number 259031

Engines: BAE 125 - 1000A

Engine Serial Nos. _: PCE-___ ; & : PCE-
305121      305051

K-44770

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: _____

Brief description of cause: _____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____          DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

USDC IN/ND  case 2:18-cv-00362   document 1-2   filed 09/25/18   page 2 of 2

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.**  Place an "X" in one of the six boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 2:18-cv-362 |
| | ) | |
| One Hawker 1000A Aircraft, Serial | ) | |
| Number 259031, with FAA Registration | ) | |
| Number N511BK-2016-FAA; | ) | |
| | ) | |
| Defendant. | ) | |

## WARRANT  FOR ARREST IN REM

TO:    THE UNITED STATES MARSHAL FOR THE NORTHERN
DISTRICT OF INDIANA  AND/OR ANY OTHER DULY AUTHORIZED
LAW ENFORCEMENT OFFICER:

WHEREAS, on  September 25, 2018, the United States of America filed
a verified complaint for civil forfeiture in the United States District Court for
the Northern District of Indiana against the above-named defendant
property, alleging that said property is subject to seizure and civil forfeiture
to the United States for reasons mentioned in the complaint;

NOW THEREFORE, you are hereby commanded to arrest and take
into your possession the above-named defendant property and to use
whatever means appropriate to protect and maintain it in your custody until
further order of the Court.

YOU ARE FURTHER COMMANDED to provide notice of this action to
any person thought to have a potential interest in or claim against the
defendant property by serving upon such person or to the attorney
representing the potential claimant with respect to the seizure of the
property, a copy of this warrant of arrest in rem and the verified complaint,

in a manner consistent with the principles of service of process of an action in rem under the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, Federal Rules of Civil Procedure.

This warrant provides notice that in order to avoid civil forfeiture of the property, any person claiming an interest in, or right against, the property must file a claim in the court where the action is pending, pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. The claim must identify the specific property claimed, identify the claimant and state the claimant's interest in the property, be signed by *the claimant* under penalty of perjury, and be served on the government attorney handling the case. A claimant must file a claim no later than 35 days after the date the notice is sent or, as applicable, no later than 30 days after the date of final publication of the notice of civil forfeiture. In addition, any person having filed such a claim shall also file an answer or motion to the complaint no later than 20 days after the filing of the claim.

All claims and answers or motions for the defendant property must be filed with the Office of the Clerk, United States District Court for the Northern District of Indiana, 5400 Federal Plaza, Hammond, Indiana 46320, and a copy of the claim and answer or motion sent to Assistant United Sates Attorney Orest Szewciw, United States Attorney's Office, 5400 Federal Plaza, Suite 1500, Hammond, Indiana 46320.

Additional procedures and regulations regarding this forfeiture action are found at 19 U.S.C. §§1602-1621.

YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed.

Dated: _____

Robert N. Trgovich
Clerk of the Court

By: _____

Deputy Clerk